**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID TAWIL, on behalf of himself and all others similarly situated, | Civil Action No. 15-8747 (FLW) (LHG) |
| Plaintiff, | **OPINION** |
| v. | |
| ILLINOIS TOOL WORKS, INC., and SOUTH/WIN LTD. | |
| Defendants. | |

**WOLFSON, United States District Judge:**

This matter comes before the Court on a motion filed by Defendants Illinois Tool Works, Inc., and South/Win Ltd. (collectively "Defendants"), seeking dismissal of the Complaint filed by Plaintiff David Tawil ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff alleges that the sensor of his car's windshield wiper system was damaged by Defendants' product, Rain-X windshield washer fluid ("Rain-X"), because that product was not compatible with cars that used continuity prong windshield washer fluid sensors. Plaintiff asserts claims individually, and on behalf of a putative class, for (1) failure to warn (Count I); and (2) design defect (Count II) under the New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1 to -11; and (3) violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -195 (Count III).

For the following reasons, Defendants' Motion to dismiss is GRANTED in part and DENIED in part. Specifically, Count III of the Complaint, alleging violations of the CFA, is dismissed because it is subsumed within Plaintiff's claims under the PLA. Defendants' motion to dismiss Counts I and II of the Complaint, based on a failure to properly plead the required elements

1

of a claim against a manufacturer under the component parts doctrine, is DENIED.  Finally, Plaintiff's request for injunctive relief is dismissed.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are taken from the Complaint, unless otherwise noted.  Defendants "manufacture, distribute, and promote Rain-X windshield washer fluid for use in motor vehicles."  Compl. ¶ 1.  Plaintiff alleges that when Rain-X is "installed in the wrong vehicles – including Volkswagen, Audi, Mini Cooper, BMW, Mercedes Benz, and Chrysler vehicles – Rain-X damages the vehicles' windshield washer fluid sensors, making them non-functional unless repaired at a cost between $100 and $200."  *Id.* at ¶ 2.

In 2014, Plaintiff purchased Rain-X for personal use in his Volkswagen GTI.  *Id.* at ¶ 37.  Plaintiff claims that in February of 2015, he noticed that his Volkswagen GTI's low fluid warning light would come on, even though a visual inspection of the reservoir showed that the washer fluid was not low.  *Id.* at ¶ 38.  Plaintiff alleges that he paid a Volkswagen dealer $130 to repair a damaged sensor in his Volkswagen GTI, which Plaintiff claims was caused by Rain-X.  *Id.* at ¶ 39.

On August 4, 2015, Plaintiff filed suit against Defendants in the United States District Court for the Northern District of Illinois, under Docket No. 15-cv-6808, asserting failure to warn and design defect claims under the PLA, and a consumer fraud claim under the CFA.  On October 5, 2015, Defendants moved to transfer this matter to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).  Defendants' motion to transfer was granted on December 4, 2015, and this matter was transferred to this Court on December 18, 2015.  On January 13, 2016, Defendants filed the instant motion to dismiss.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss,

2

courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal.*  First, the court should "outline the elements a plaintiff must plead to a state a claim for relief."  *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).  Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth.  *Id.; see also Iqbal,* 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations and citations omitted).  Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief."  *Bistrian,* 696 F.3d at 365 (quoting *Iqbal,* 556 U.S. at 679).  A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

**III.    DISCUSSION**

      **A.    Plaintiff's CFA Claim (Count III) is Subsumed by the PLA**

Defendants argue that Plaintiff's claim under the CFA (Count III) must be dismissed because it is subsumed within the PLA.  Plaintiff advances two arguments in opposition to application of the subsumption doctrine to his CFA claim.  First, Plaintiff argues that while he is asserting PLA claims for damage caused by Rain-X, his CFA claim seeks only the remedy of a refund of the purchase price of Rain-X, rather than the cost to repair the sensors allegedly damaged by Rain-X.  Second, Plaintiff argues that it not clear at this time which consumers' vehicles were damaged by Rain-X, and which consumers have *only* suffered economic harm because they purchased Rain-X, but did not use it in their vehicles.  As discussed in more detail below, Plaintiff's attempt to salvage his CFA claim is unavailing, and his CFA claim is subsumed within his PLA claims.

The PLA was enacted "to limit the expansion of products-liability law" and "to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality."  *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 47-48 (1996) (quotations and citations omitted). The PLA, therefore, "established the sole method to prosecute a product liability action[,]" and, after its enactment on July 22, 1987, "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div.), *certif. denied*, 126 N.J. 390 (1991).  The PLA defines the term "product liability action" as "any claim or action. . . for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3).

The New Jersey Supreme Court has expressly held that "[t]he language of the PLA represents a clear legislative intent that . . . the PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (2008); *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 456 (D.N.J. 2012) ("Courts have found that the

4

NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product.") (citations omitted).  In that regard, the Third Circuit has explained that the PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *see also Estate of Knoster v. Ford Motor Co.*, 200 F. App'x. 106, 115-16 (3d Cir. 2006).

New Jersey law is clear that the subsumption doctrine applies to claims for economic damages predicated upon an alleged failure to warn of a product's risks.[1]  *See Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008) (claim for costs of medical monitoring following use of Vioxx subsumed by PLA); *In re Lead Paint Litig.*, 191 N.J. 405, 436-37 (2007) (PLA subsumes claims for costs of detecting and removing lead paint from homes and buildings, providing medical care to residents afflicted with lead poisoning, and developing educational programs about the paint's dangers); *McDarby v. Merck & Co.*, 401 N.J. Super. 10, 97 (App. Div. 2008) (CFA claim for economic losses from misrepresentations of the safety of Vioxx subsumed by PLA because "what [the plaintiffs] are asserting is, at its core, that Merck failed to warn of dangers from a product of which it had knowledge, resulting in alleged economic harm to them.").

Indeed, pursuant to this line of cases, New Jersey courts have rejected similar attempts to split remedies and avoid the subsumption doctrine.  *See DeBenedetto v. Denny's, Inc.*, 421 N.J.

---

[1] Numerous federal courts have also recognized that "[l]imiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA." *Vercellono v. Gerber Prods. Co.*, No. 09-2350, 2010 U.S. Dist. LEXIS 9477, *20 (D.N.J. Feb. 3, 2010), *reconsideration granted on other grounds*, 2010 U.S. Dist. LEXIS 80137 (D.N.J. Aug. 2, 2010); *see also Kury v. Abbott Labs., Inc.*, No. 11-803, 2012 U.S. Dist. LEXIS 4862, *11-12 (D.N.J. Jan. 17, 2012); *Smith v. Merial Ltd.*, No. 10-439, 2011 U.S. Dist. LEXIS 56461, *12 (D.N.J. May 26, 2011); *Crouch v. Johnson & Johnson Consumer Cos.*, No. 09-2905, 2010 U.S. Dist. LEXIS 37517, *19 (D.N.J. Apr. 15, 2010); *Fellner v. Tri-Union Seafoods, LLC*, No. 06-688, 2010 U.S. Dist. LEXIS 36195, *15-16 (D.N.J. Apr. 13, 2010); *O'Donnell v. Kraft Foods, Inc.*, No. 09-4448, 2010 U.S. Dist. LEXIS 26023, *8-9 (D.N.J. Mar. 18, 2010).

Super. 312, 321 (Law Div. 2010), *aff'd,* 2011 N.J. Super. Unpub. LEXIS 63 (App. Div. Jan. 11, 2011), *cert. denied*, 205 N.J. 519 (2011).  In that case, the plaintiff brought a CFA claim seeking only economic losses, for the purchase price of a product, Denny's "Moons Over My Hammy," which the plaintiff alleged he would not have purchased had Denny's provided accurate descriptions of the excessive salt-content of that meal.  The plaintiff also specifically excluded any claim for personal injury in an attempt to avoid the subsumption doctrine.  The Court concluded that the PLA's subsumption doctrine encompassed claims for economic harm where the "core" of the plaintiff's claim sounded in tort, such as a claim for failure to warn:

> [T]he core of DeBenedetto's allegation is that Denny's has misrepresented the safety of its products by failing to warn plaintiff of its dangers.  Indeed, DeBenedetto specifically alleges that "the Denny's restaurant menu deceptively presents various items as single meals to be consumed by one individual without disclosing that these meals contain substantially more sodium . . . than the maximum recommended amount for all meals consumed by an individual in an entire day."  "This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA."  Lead Paint, 191 N.J. at 437.  Accordingly, because the core of DeBenedetto's second amended complaint is that Denny's failed to adequately warn consumers of the dangerous levels of sodium in its meals, his exclusive remedy is the PLA.

*DeBenedetto*, 421 N.J. Super. at 323.  As in *Debenedetto*, Plaintiff cannot avoid the subsumption doctrine by limiting the relief he seeks under the CFA to the purchase price of Rain-X because, at its core, Plaintiff's CFA claim is that Defendants failed to warn Plaintiff that Rain-X was not compatible with his vehicle's windshield wiper system.  "This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA."  *In re Lead Paint Litig.*, 191 N.J. at 437.

Similarly, Plaintiff's argument that *some* class members' CFA claims *might* avoid subsumption because they have only economic damages in the form of the purchase price of Rain-X (but did not put Rain-X into their cars), cannot prevail.  Like the plaintiff in *Debendetto*, who

6

explicitly disclaimed any personal injury claim, these hypothetical class members would have not suffered damage to their vehicles' sensors because they had not used Rain-X in their vehicles yet. Nevertheless, although no class has been certified, the core of these claims would clearly be that Defendants failed to warn of the potential danger in using Rain-X in non-compatible vehicles. As such, their claims, relying on the tort-law duty to warn, would also be subsumed within the PLA.

Accordingly, Count III of the Amended Complaint is dismissed.[2]

### B. The Component Parts Doctrine is Not Applicable to Plaintiff's PLA Claims (Counts I & II).

Defendants also move to dismiss Plaintiff's PLA claims in Counts I and II of the Complaint, arguing that Plaintiff has failed to allege the elements required to impose liability on a manufacturer under the component parts doctrine. Plaintiff argues that it is not required to allege those elements because Rain-X is not a component part and, therefore, the component parts doctrine does not apply. Because Plaintiff's claim is for harm allegedly caused by Rain-X *to* his car's windshield wiper sensor system, rather than for harm caused *by* the windshield wiper system due to the incorporation of Rain-X as a component part, this Court agrees that the component part doctrine is inapplicable to Plaintiff's claim.

Plaintiff asserts two causes of action under the PLA: design defect (Count I), and (2) failure to warn (Count II). "The elements for proving a product defect under either theory are essentially the same." *Boldman v. Wal-Mart Stores, Inc.*, No. 16-0004, 2016 U.S. Dist. LEXIS 59318, *9 (D.N.J. May 3, 2016) (citing *Zaza*, 144 N.J. at 48-50; *Mathews v. Univ. Loft Co.*, 387 N.J. Super. 349, 362 (App. Div.), *certif. denied*, 188 N.J. 577 (2006)). "[T]he only difference is the nature of the alleged defect." *Durkin v. Paccar*, No. 10-2013, 2010 U.S. Dist. LEXIS 110999, *21 (D.N.J.

---

[2] Because the Court has dismissed Plaintiff's CFA claim as subsumed by the PLA, it will not address whether that claim was plead with sufficient particularity to satisfy Rule 9(b).

Oct. 19, 2010) (citations omitted).  To state a claim under either theory, a plaintiff must allege that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user.  *Myrlak v. Port Auth. of NY and NJ*, 157 N.J. 84, 97 (1999). "In a design defect case, the plaintiff has to show that the product design is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes[.]"  *Michalko v. Cooke Color & Chemical Corp.*, 91 N.J. 386, 394 (1982) (citation and internal quotation marks omitted).  "In a failure-to-warn case, the defect consists of the absence of a warning concerning the product's potential for injury, and the plaintiff must prove that the warning's absence was a proximate cause of the harm."  *London v. Lederle Lab.*, 290 N.J. Super. 318, 327 (App. Div. 1996), *aff'd as modified by Batson v. Lederle Lab.*, 152 N.J. 14 (1997).  "[T]he ultimate question to be resolved in [both] design-defect and failure-to-warn cases is whether the manufacturer acted in a reasonably prudent manner in designing and fabricating a product."  *Mathews*, 387 N.J. Super. at 362 (quoting *Zaza*, 144 N.J. at 49).

Importantly, Defendants have not moved to dismiss Plaintiff's PLA claims on the ground that Plaintiff has failed to sufficiently allege the above elements of traditional design defect and failure to warn claims under the PLA.  Instead, Defendants argue that because Rain-X is a component part of Plaintiff's car's windshield wiper system, Plaintiff must also allege the elements required to hold a manufacturer liable under the components part doctrine in order to state a claim under the PLA.  The Court disagrees.

The so-called component parts doctrine, set forth in the Restatement (Third) of Torts: Products Liability § 5 (1998), and adopted by New Jersey courts, provides for the imposition of liability on a manufacturer "for the harm caused by a defective finished product*." Boyle v. Ford*

*Motor Co.*, 399 N.J. Super. 18, 24 (App. Div.), *certif. denied*, 196 N.J. 597 (2008); *see also Restat 3d of Torts: Products Liability* § 5 (setting forth test to impose liability on "[o]ne engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property *caused by a product into which the component is integrated*[.]") (emphasis added). Under the doctrine, to impose liability on a component part manufacturer, a plaintiff must allege either:

> (1) such defect was caused by the integration of a defective component product into the finished product; or (2) the manufacturer or distributor of the component product substantially participates in the integration of the component product into the ultimate design of the finished product; and (i) the integration of the component causes the product to be defective; and (ii) the resulting defective product is a proximate cause of the harm.

*Boyle*, 399 N.J. Super. at 24 (citing *Restat 3d of Torts: Products Liability* § 5).

Significantly, the component parts doctrine applies only when the plaintiff is seeking to impose liability on a manufacturer for harm caused *by* a defective finished product. *See, e.g.*, *Zaza*, 144 N.J. 34 (analyzing liability of component part manufacturer of quench tank for a claim that the coffee decaffeination system, in which the quench tank was incorporated, overflowed and injured a plaintiff because manufacturer did not install safety devices in holes installed in quench tank); *Boyle*, 399 N.J. Super. 18 (analyzing liability of component part manufacturer of truck chassis for claim that the truck, in which the chassis was incorporated, injured a plaintiff in motor vehicle accident). Here, however, Plaintiff's claim is not that the windshield wiper system caused harm to any person or property as a result of the incorporation of Rain-X, but rather that Rain-X caused harm to the windshield wiper system itself. Simply put, as alleged, Defendants are not component part manufacturers. Because Plaintiff does not seek to hold Defendants liable "for the harm caused by a defective finished product," *Boyle*, 399 N.J. Super. at 24, but rather for the harm

9

allegedly caused by a car owner adding Rain-X to an existing windshield wiper system, his claims are traditional products liability causes of action and the component parts doctrine does not apply.

Accordingly, Defendants' motion to dismiss Counts I and II of the Complaint is DENIED.

### C. Injunctive Relief

Finally, Defendants move to dismiss Plaintiff's claim for prospective injunctive relief – in the form of either requiring Defendants to include warnings or to refrain from selling Rain-X without warnings – based on both a lack of standing and a failure to state the required elements for injunctive relief. This Court finds that Plaintiff lacks standing to seek prospective injunctive relief.

When a plaintiff seeks prospective injunctive relief, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). In addition, in a putative class action suit, the initial inquiry is whether the lead Plaintiff has standing individually. *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007).

This case closely parallels the Third Circuit's decision in *McNair*. That matter concerned an automatic magazine renewal subscription program under which the defendant, Synapse, sent an allegedly deceptive postcard which appeared like an offer for a new subscription instead of an automatic renewal notice for an existing subscription. *McNair*, 672 F.3d at 218-19. The Court of Appeals considered whether former customers of a magazine subscription possessed standing to pursue prospective injunctive relief based on their allegation that, although they were no longer customers, "they are subject to a sufficiently real and immediate threat of future harm because Synapse is the leading marketer of magazine subscriptions and bombards the public with its offers" and because Synapse "offers compelling deals in which it does not clearly identify itself; and because it sends customers advance notifications that are, by design, meant to fool consumers into

discarding the notification received." *Id.* at 224. The Third Circuit rejected this argument and held that the former customers did not have standing to pursue prospective injunctive relief, holding:

> Perhaps they may accept a Synapse offer in the future, but, speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess. Whether they accept an offer or not will be their choice, and what that choice may be is a matter of pure speculation at this point. Indeed, while the injuries Appellants allegedly suffered when they were Synapse customers may suffice to confer individual standing for monetary relief, the wholly conjectural future injury Appellants rely on does not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm.

*Id.* at 226 (citations and footnotes omitted).

Plaintiff attempts to distinguish *McNair* based on a footnote in an unpublished, out-of-circuit decision, *In re Motor Fuel Temperature Sales Practices Litig. ("In re Motor Fuel Temperature")*, No. 07-1840, 2012 U.S. Dist. LEXIS 57981, 114-116 n.32 (D. Kan. Apr. 24, 2012). That case involved claims that the defendants were selling motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion. In rejecting the defendants' argument that certain customers lacked standing to seek prospective injunctive relief, the court distinguished *McNair*, because "in *McNair*, it was less reasonable to believe that the plaintiffs could be fooled twice by the same deceptive postcard," whereas in that case, "no one question[ed] whether the named representatives intend to buy motor fuel from Costco again" and "even though plaintiffs know that Costco does not disclose or adjust for temperature, they have no way to protect against injury in future motor fuel transactions because they have no way of knowing the temperature of the motor fuel that they buy." *Id.* at 116 n.32.

Without commenting on this rationale for distinguishing *McNair,* which is not binding on this Court in any event, this Court is not persuaded that this case is analogous to *In re Motor Fuel*

11

*Temperature*. In that case, the plaintiffs claimed they had no way of knowing whether they were paying the correct price for their fuel, which they intended to continue to buy from defendants, because they would not know if the price had been adjusted to account for temperature expansion. That is not Plaintiff's request for relief here. Plaintiff argues he has standing to pursue injunctive relief because Defendants "continue to market" Rain-X without warnings, and "it is reasonable to infer that Tawil would still be interested in purchasing Rain-X if it were labeled properly." Pl. Opp. Br. at 14. Importantly, however, Plaintiff does not argue that he would buy Rain-X, as it exists now, if it merely included a warning that it was incompatible with his car's windshield wiper system, just as the plaintiffs in *In re Motor Fuel Temperature* would purchase fuel if they knew its price was properly adjusted for temperature expansion. Indeed, such an argument would be nonsensical. Instead, Plaintiff claims that while he "may know that, in the past, Rain-X was formulated in a manner that made it incompatible with *certain* vehicles' washer fluid sensors," *i.e.*, *his* car's windshield wiper system, "in the absence of an injunction requiring Defendants to provide appropriate warnings to consumers, *he has no way to know if [Rain-X] has been reformulated by Defendants to fix this compatibility problem*." Pl. Opp. Br. at 15 (emphasis added). Whether Defendants may or may not reformulate Rain-X to be compatible with Plaintiff's car's windshield wiper system is wholly irrelevant.

The question is whether Plaintiff, armed with the knowledge that Rain-X (as it currently exists) is incompatible with his car's windshield wiper system, would purchase Rain-X again in the absence of warnings that the product is not compatible with his car. As in *McNair*, this Court must assume Plaintiff would act rationally, based on the knowledge he possesses, and would not purchase a product that he knows would damage his vehicle's windshield wiper system. *See McNair*, 672 F.3d at 226. The "wholly conjectural future injury" Plaintiff alleges cannot satisfy

12

the constitutional requirement that a plaintiff seeking injunctive relief plausibly allege a likelihood of future harm.  *See id.* at 225.

Accordingly, Plaintiff's request for prospective injunctive relief is dismissed based on lack of standing.[3]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss is GRANTED.  Specifically, Count III of the Complaint, claiming violation of the CFA, is dismissed because it is subsumed within Plaintiff's claims under the PLA.  Counts I and II of the Complaint, based on a failure to plead the required elements of a claim against a manufacturer under the component parts doctrine, is DENIED.  Finally, Plaintiff's request for injunctive relief is dismissed.

Dated: August 10, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge

---

[3] Because the Court has dismissed Plaintiff's claim for injunctive relief for lack of standing pursuant to Rule 12(b)(1), I will not address whether this claim for relief could withstand Defendants' challenge pursuant to Rule 12(b)(6), which challenge would be premature at this time, in any event.  *See Schraeder v. Demilec (USA), LLC*, No. 12-6074, 2013 U.S. Dist. LEXIS 97515, *18-19 (D.N.J. July 12, 2013) (dismissing counts for injunctive relief as separate causes of action, but declining to address requests for injunctive relief as remedies for other claims, "because at this stage in the litigation, before a substantial factual record has been developed, it would be premature to determine what remedies are appropriate.").